State ex rel. Martin vs. State Board of Pharmacy.

---

## No. 13,937.

STATE OF LOUISIANA EX REL. F. R. MARTIN VS. STATE BOARD OF PHARMACY

### SYLLABUS.

The establishment by the Board of Pharmacists of a domicile in the city of New Orleans was a competent exercise of implied power, necessary to the enjoyment of the powers expressly conferred upon said Board by Act No. 66 of 1888, and to the accomplishment of the object for which said Board was created; and this proceeding, brought in the District Court for the parish of Acadia, and based upon citation served upon the president of defendant Board in the parish of Iberville, was properly dismissed for want of jurisdiction *ratione personae*.

APPEAL from the Eighteenth Judicial District, Parish of Acadia *De Baillon, J*.

---

*Story & Pugh,* for Relator, Appellant.

---

*Walter Guion,* Attorney General, (*Henry L. Garland, Jr.,* of counsel) for Respondent, Appellee.

---

The opinion of the court was delivered by

MONROE, J. The relator filed this suit in the Parish of Acadia, praying that the Board named as defendant be commanded by *mandamus* to reg-

536      SUPREME COURT OF LOUISIANA,

State ex rel. Martin vs. State Board of Pharmacy.

ister him as pharmacist, and to issue a certificate to that effect. The petition was served on L. P. Vaillon, the president of the Board, in the parish of Iberville, by the deputy of the sheriff of that parish. Thereafter, the Board filed a plea to jurisdiction, as follows, to-wit:

" That this defendant is domiciled in the parish of Orleans, under " and by virtue of a resolution of this Board, adopted October 17, 1888. " * * * Further excepting, defendant says that if said resolution " was illegal, which is denied, then, this Board, being a public corpora- " tion, created by act No. 66, of 1888, and exercising important legal " and governmental functions, is a branch of the State government and " legally domiciled at the capital of the State," etc.

The evidence shows that the president of the Board resides in Iberville, three of the members in Natchitoches, Baton Rouge and St. Martin, respectively, and the other five members (including the secretary and treasurer) in the parish of Orleans. It also shows that, at the first meeting of the Board, October 17, 1888, the following resolution was adopted, to-wit:

" That five members shall constitute a quorum, and that the official " domicile of this Board shall be in the city of New Orleans."

Upon this evidence, the case was submitted, and there was judgment, maintaining the plea to jurisdiction, and dismissing the suit, and the relator has appealed.

The defendant Board was created under the authority of Act No. 66, of 1888, which authorizes the Governor to "appoint the Board of Pharmacy, consisting of nine reputable, practicing pharmacists, doing business in the State," etc. The term of office of the members and the manner of filling vacancies is fixed by the act. Provision is also made by the act for the election of a president and of "an officer to be known " as the secretary and treasurer," and the Board is vested with authority to register persons properly qualified as pharmacists, and to issue · its certificates to the persons so registered. And it is made unlawful for any person not so registered to conduct the business of pharmacist in this State. The act provides that the Board "shall have the right " to refuse registration, subject to the right of the applicant to appeal " to the courts, by *mandamus,*" but it does not specify the courts to which such application is to be made, nor does it fix, or refer to, the domicile of the Board; and, from these last mentioned circumstances, the counsel for the relator argue that the Board is without authority to establish a domicile for itself, and hence, inasmuch as its jurisdiction

extends throughout the State, that it can be sued in any court in the State in which it may suit the convenience of the person having a claim against it to bring his action. In support of this view, the learned counsel call your attention to the statutes creating the various levee boards, which either fix their domiciles, or, in terms, authorize such boards to do so; and they refer to the cases of State *ex rel.* Police Jury vs. Judge, 40 Ann. 118, and State *ex rel.* Police Jury vs. Parish, 41 Ann. 403, in which it was held that a police jury is amenable to the jurisdiction of the courts in the different wards of the parishes over which their authority extends; and, finally, they suggest, "that, if the domicile of " the defendant board could be fixed by its own resolution, for the pur- " poses of suits against it, great hardship would result to suitors by its " dereliction of duty and arbitrary ruling and conduct."

Considering these propositions in inverse order; we are unable to discover in what respect the situation of a person having a claim against the defendant Board would be worse, should it be held that the latter has the right to fix its own domicile, than is that of the average individul, having a claim against any other person, natural or artificial. The rule is that a defendant is to be sued at his domicile, and not at the domicile of the plaintiff, and the illustrations of which the counsel make use, i. e., the cases of the levee boards, which are vested by specific provision of law with the authority to select their own domiciles, whatever may be their value elsewhere, do not sustain the particular view which we are here considering.

As to the cases of the Police Juries, it would seem to be enough to say, that, if an incorporated parish should succeed in confining itself within the limits of one of its own wards, to the exclusion of the others, or should so regulate its existence that it could not be found in any of its wards, the different departments of the State government would be called upon to deal with a problem with which we are not now confronted. The defendant in this case is not an incorporated subdivision of the State, seeking to escape from itself, but is a body corporate established under a law of the State and vested with jurisdiction of a particular subject matter, and which, as a necessity to the proper exercise of its functions, and in conformity to the public policy of the State, as declared in its general legislation, has established a domicile within the State at which it can be found.

Without undertaking, at this time, to differentiate cases involving the exercise of powers which impose burdens on the public, or which are

in derogation of common right, it may be said that, in addition to the powers expressly conferred upon them, all corporations, whether public or private, with equal right, exercise such implied powers as may be necessary to enable them to exercise the powers expressly conferred, and to accomplish the objects for which they are created.

The question, then, is, was it necessary, in order that the defendant should exercise the powers expressly conferred upon it, and should accomplish the object for which it was created that it should exercise the power, not expressly conferred, of establishing a domicile? The power is expressly conferred upon the defendant to examine into the qualifications of persons desiring to practice the profession of pharmacy in this State, and to issue certificates by virtue of which those who are found to possess the necessary qualifications may lawfully practice that profession; and the object to be accomplished is the protection of the lives and the health of the people of the State against ignorant, incompetent, and disreputable persons, in the matter of the preparation and sale of drugs and medicines. The law provides that each applicant shall pay to the Board five dollars for his examination and three dollars for his certificate. The proposition of the relator is, that the domicile of the Board is at every place and at any place in the State where it may suit the convenience of the applicant to fix it; from which it would follow that the Board would be equally bound to furnish a quorum of its members, for the examination of an applicant, at his residence in the swamps of East Carroll, or upon the plains of Calcasieu, as in the parish of Acadia or in any city, town, or hamlet in the State. But it is plain that this could not be done, at the price fixed in the act, from which it is reasonable to infer that the Legislature did not intend that it should be done. Aside from which, the general policy of the law may be said to find expression in section 940 of the Revised Statutes, which declares that, "Every corporation organized, or which may hereafter be "organized, under and by virtue of any law of this State, shall estab- "lish its domicile at some place within the State of Louisiana and not "elsewhere."

Our conclusion is that the establishment by the defendant of a domicile in the city of New Orleans was the competent exercise of an implied power derived from the act by which said defendant was created, and that the District Court for the parish of Acadia properly declined jurisdiction of this suit.

Judgment affirmed.